UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

RICHARD BOZELL,

                    Plaintiff,                        Case No. 2:25-cv-166

v.                                                    Honorable Robert J. Jonker

JEFF HOWARD et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner. The Court will grant Plaintiff leave to proceed *in forma pauperis*.

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined Defendants Howard, Storey, Massey, C. Batho, Teneyck, Tuller Desormeau, Jurich, Smith, Batho, Voorhees, Slater, Vital Core Physicians Group, Corizon Health Care, Wellpath, Knack, Jacobson, Ball, Lamb, and Hascall-Reyes. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice.

Further, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v.*

*Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint against properly joined Defendants Ferraro, Goforth, Longson, Bonnee, Kagey, Romeri, and Tuzinowski for failure to state a claim as detailed below.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Vital Core Physicians Group, Corizon Health Care, Wellpath, and the following KCF staff: Warden Jeff Howard, Assistant Deputy Warden Barbara Storey, Corrections Officer Unknown Massey, Assistant Deputy Warden C. Batho, Inspector Unknown Teneyck, Inspector Unknown Tuller Desormeau, Sergeant Unknown Romeri, Lieutenant Unknown Jurich, Captain Unknown Kagey, Sergeant Unknown Ferraro, Sergeant Unknown Tuzinowski, Sergeant Unknown Bonnee, Unknown Smith, Corrections Officer Unknown Goforth, Corrections Officer Unknown Longson, Corrections Officer Trainee Unknown Batho, Grievance Coordinator R. Voorhees, Hearings Investigator L. Slater, Nurse Jessica Knack, Registered Nurse Dawn Jacobson, Health Unit Manager Wendy Ball, Registered Nurse Patricia Lamb, and Registered Nurse Unknown Hascall-Reyes. (Compl., ECF No. 1, PageID.1, 3–6.)

In Plaintiff's complaint,[1] he alleges that on April 14, 2024, while he was being reviewed on an unspecified misconduct charge, "Plaintiff orally asserted grieving [Defendants] Ferraro, Goforth, [and] Longson for conspiring to forge false misconducts."[2] (*Id.*, PageID.10.) Specifically, Plaintiff claims that Defendants Ferraro and Goforth "are in an ongoing relationship resulting in Ferraro spending most of his 8[-]hour shifts in Housing Unit B with Goforth." (*Id.*) Plaintiff states that Defendant Ferraro "is Goforth's supervisor and constantly advises and writes misconducts for Def[endants] Goforth and Longson to create reasons to stay in the unit spending personal time with Goforth, [and] then comes back to the unit to review misconducts with prisoners and again stays for hours." (*Id.*) In response to Plaintiff's April 14, 2024, statement, Defendant Ferraro stated: "I can write misconducts for them if I want to; your grievance is going to get your sh[**] tore up and more tickets. We'll be down there to tear your sh[**] up." (*Id.*)

On July 6, 2024, Plaintiff alleges that Defendant Goforth "planted evidence, [and] forged a false dangerous contraband misconduct." (*Id.*) Plaintiff reports that the contraband misconduct stated:

> At 1850hrs during a cell search of [Plaintiff's cell] I found several pieces of burnt wire and two adapters with burn marks on the end. The burnt pieces of wire and the adapters were located in a hole in the wall at the head of the B-263 bunk. In a prison setting this is an incendiary device and can create a spark. Per housing area of control diagram this is [Plaintiff's] area of control. . . .

(*Id.*) Plaintiff also alleges that on July 6, 2024, Defendants Ferraro and Goforth entered his cell and stole his "JP6 tablet." (*Id.*, PageID.11.) Plaintiff did not receive a contraband removal notice for this item and an administrative hearing was never held. (*Id.*)

---

[1] In addition to reviewing Plaintiff's complaint, the Court has also reviewed all of the attachments to Plaintiff's complaint.

[2] In this opinion, the Court corrects the capitalization and spelling in quotations from Plaintiff's complaint. The Court also removes the emphasis from quotations from Plaintiff's complaint.

Defendant Bonnee reviewed the dangerous contraband misconduct charge with Plaintiff, and "did not place [Plaintiff] on non-bond status pending [the] hearing." (*Id.*, PageID.12.) Plaintiff alleges that unnamed, non-party "unit officers began telling Plaintiff [that] he [wa]s on non-bond status," and Plaintiff told them that his copy of the misconduct report was "not endorsed as non-bond." (*Id.*) Plaintiff also advised non-party Assistant Deputy Bigger and Defendants Kagey and Ferraro about this, Plaintiff claims that one of them "marked the box" on the original copy of the misconduct report to show that Plaintiff was on non-bond status. (*Id.*) Plaintiff alleges that at some point, Defendants Voorhees and Batho "fabricated a false rejection" of Plaintiff's grievance about the matter. (*Id.*)

At the dangerous contraband misconduct hearing on July 11, 2024, Plaintiff advised the non-party hearing officer that "the misconduct [wa]s false," explaining that "the hole in the wall [wa]s not [Plaintiff's] area of control," as is set forth in "MDOC policy [and] procedure." (*Id.*, PageID.11.) The non-party hearing officer found Plaintiff guilty of the misconduct charge, and Plaintiff received fifteen days on toplock. (*Id.*)

On September 24, 2024, Plaintiff "had hernia surgery." (*Id.*) At that time, Plaintiff's "right leg was paralyzed, [and he] was unable to walk." (*Id.*) When Plaintiff returned to KCF, Defendant Howard saw Plaintiff's condition and ordered the transportation officer "to return [Plaintiff] to the hospital due to [Plaintiff's] lack of mobility." (*Id.*) When Plaintiff returned to KCF for the second time, "health care issued [him] a wheelchair [and] crutches." (*Id.*)

Plaintiff alleges that Defendant Goforth knew that Plaintiff "was paralyzed and in extreme pain from [the] hernia surgery," and on September 24, 2024, ordered Plaintiff "to walk to [the] control center" to pick up his ID card, stating: "[Defendant] Ferraro said report to [the] control center to pick up your ID card[;] That's not my 'f[***]in job.'" (*Id.*) In response, Plaintiff told

Defendant Goforth that "he [would be] grieving her retaliation for pending grievances as she knows [Plaintiff was] paralyzed[ and] in extreme pain from surgery." (*Id.*) Plaintiff "advised her to get a wheelchair and a pusher," and another prisoner offered to push Plaintiff in the wheelchair. (*Id.*) Defendant Goforth then left and returned with Defendant Longson, stating: "We're giving you a direct order[] to go get your ID card, that's not my f[***]ing job." (*Id.*, PageID.12.) The other prisoner again offered to push Plaintiff in a wheelchair, and Defendant Goforth stated: "F[***] him, he wants to write grievances, he can walk." (*Id.*)

Defendant Goforth issued Plaintiff a disobeying a direct order misconduct charge for the above-described incident, and on September 25, 2024, Defendant Tuzinowski reviewed this charge with Plaintiff. (*Id.*) Plaintiff alleges that Defendant Tuzinowski allowed the "defective" misconduct charge to be rewritten to correct an unspecified defect, and that Defendant Ferraro rewrote the misconduct ticket. (*Id.*) The rewritten misconduct ticket stated that "[Plaintiff] did not comply and walked into the quiet room and sat down at a table." (*Id.*) At the October 1, 2024, misconduct hearing, Plaintiff was found not guilty because the non-party hearing officer determined that "a review of the video footage" showed that Plaintiff "was clearly on crutches in his cube and at no time did [he] enter the quiet room and sit down in a chair at the table." (*Id.*)

Plaintiff filed a grievance about the disobeying a direct order misconduct charge, and Defendants Kagey and Romeri "lied in [their] grievance response" dated October 30, 2024. (*Id.*) Specifically, Plaintiff alleges that in the grievance response, Defendant Kagey stated that Kagey "spoke with healthcare and asked if Prisoner Bozell was given a detail to be pushed in a wheelchair, and the answer was he was not." (*Id.*) Plaintiff claims that as of September 24, 2024, he did in fact have a medical detail for a wheelchair. (*Id.*)

At an unspecified time after the hearing, Plaintiff claims that Defendant Slater "refused to forward [Plaintiff's] hearing [and] appeal package" regarding the hearing. (*Id.*)

Also on September 25, 2024, Plaintiff told Defendant Hascall-Reyes that Plaintiff "was denied [his] food tray required to take [his] restricted meds." (*Id.*, PageID.13.) Plaintiff told Defendant Hascall-Reyes that he was "in extreme pain" and his "leg [wa]s paralyzed, and that he "need[ed] a food tray before meds." (*Id.*) Defendant Hascall-Reyes "refused to order a meal tray." (*Id.*) Plaintiff "advised grieving Reyes for dereliction of duty for lack of food to take doctor ordered, post[-]surgery restricted meds." (*Id.*) In response, Defendant Hascall-Reyes stated: "I don't have time for you or your grievance, leave go back and write your grievance, you have nothing coming." (*Id.*) At some unspecified later time, Plaintiff filed a grievance about the matter, and Defendants Jacobson and Ball "lied in [their] grievance response . . . in collusion with [Defendant] Hascall-Reyes." (*Id.*)

Further, Plaintiff alleges that "KCF health care refused to provide Plaintiff with copies of his post[-]surgery records of doctor ordered medicine." (*Id.*) Plaintiff claims that Defendants Lamb and Ball lied about the matter, claiming that the hospital did not send written instructions when Plaintiff was discharged from the hospital. (*Id.*)

On December 30, 2024, Defendant Batho "forged a false substance abuse misconduct after Plaintiff advised grieving Batho for destroying property during [a] shakedown." (*Id.*, PageID.14.) Defendant Smith reviewed the misconduct charge with Plaintiff on December 31, 2024. (*Id.*) Plaintiff requested "body cam" and "unit video footage" of the incident with Batho, and Defendant Smith refused, stating: ". . . I don't know the process to retrieving the body cam footage and you need to take this matter up with the unit officers." (*Id.*) On January 22, 2025, Defendant Slater "called Plaintiff to take a statement." (*Id.*) Plaintiff told Defendant Slater that he wanted the body

cam footage, and Defendant Slater refused to provide it. (*Id.*) Plaintiff claims that he "was never called to his administrative hearing" for this misconduct charge, and Defendant Slater "never mailed Plaintiff's request for his hearing package." (*Id.*)

On March 8, 2025, Defendant Longson "forged a false out of place misconduct in retaliation for pending grievances." (*Id.*, PageID.14–15.) In the misconduct report, Defendant Longson stated that he had "directly observed [Plaintiff] via [the] facility camera system," but Plaintiff claims that Longson "did not directly observe a violation via [the] facility camera system." (*Id.*, PageID.15.) Plaintiff was ultimately found not guilty of the out of place misconduct charge. (*Id.*) Plaintiff filed a grievance about the matter, and Plaintiff claims that Defendants Voorhees, Batho, and Howard "fabricated [and] forged a false rejection of [the] grievance." (*Id.*)

Plaintiff alleges that Defendants Howard, Storey, C. Batho, Teneyck, Tuller Desormeau, and Massey "participated in the acquiescence in the known misconduct necessary for supervisory liability," and that these Defendants "disregarded [all of] Plaintiff's notices" about the issues in the complaint. (*Id.*, PageID.9.)

Based on the foregoing allegations, Plaintiff brings the following claims pursuant to 42 U.S.C. § 1983: First Amendment retaliation claims, Eighth Amendment claims, Fourteenth Amendment equal protection claims, Fourteenth Amendment procedural and substantive due process claims, and civil conspiracy claims. (*Id.*, PageID.1, 2–3, 7–8.) Plaintiff also brings § 1981 claims, § 1985 claims, Americans with Disabilities Act (ADA) claims, Rehabilitation Act (RA) claims, and state law civil and criminal claims. (*Id.*, PageID.1, 2–3, 8, 16.) Plaintiff seeks monetary damages, fees and costs, and injunctive relief. (*Id.*, PageID.8, 14–15.)

## II.    Misjoinder

### A.    Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related

to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his

claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Defendant Ferraro is the first Defendant named in the *factual* allegations in the complaint. (Compl., ECF No. 1, PageID.10.) Plaintiff alleges that on April 14, 2024, while he was being reviewed on an unspecified misconduct charge, "[he] orally asserted grieving [Defendants] Ferraro, Goforth, [and] Longson for conspiring to forge false misconducts." (*Id.*) Further, Plaintiff alleges that on July 6, 2024, Defendants Ferraro and Goforth entered his cell and stole his "JP6 tablet." (*Id.*, PageID.11.) On that same date, Plaintiff claims that Defendant Goforth issued him a false misconduct charge based on a search of Plaintiff's cell, and that after Defendant Bonnee did not place Plaintiff on non-bond status pending hearing, either non-party Assistant Deputy Bigger or Defendant Kagey or Defendant Ferraro "marked the box" on the original copy of the misconduct report to show that Plaintiff was on non-bond status. (*Id.*)

Additionally, Plaintiff alleges that on September 24, 2024, after he had hernia surgery, Defendant Goforth knew that Plaintiff "was paralyzed and in extreme pain from [the] hernia surgery" and ordered Plaintiff "to walk to [the] control center" to pick up his ID card, stating: "[Defendant] Ferraro said report to [the] control center to pick up your ID card[;] That's not my 'f[***]in job.'" (*Id.*) Defendant Goforth then left and returned with Defendant Longson, stating: "We're giving you a direct order[] to go get your ID card, that's not my f[***]ing job." (*Id.*, PageID.12.) Defendant Goforth issued Plaintiff a disobeying a direct order misconduct charge for the above-described incident, and on September 25, 2024, Defendant Tuzinowski reviewed this charge with Plaintiff. (*Id.*) Plaintiff alleges that Defendant Tuzinowski allowed the "defective" misconduct charge to be rewritten to correct an unspecified defect, and that Defendant Ferraro rewrote the misconduct ticket. (*Id.*) Plaintiff filed a grievance about the disobeying a direct order

misconduct charge, and Defendants Kagey and Romeri "lied in [their] grievance response" dated October 30, 2024. (*Id.*) Subsequently, on March 8, 2025, Defendant Longson "forged a false out of place misconduct in retaliation for pending grievances." (*Id.*, PageID.14–15.)

As described above, Plaintiff's allegations against Defendants Ferraro, Goforth, Longson, Bonnee, Kagey, Romeri, and Tuzinowski are transactionally related; however, Plaintiff's allegations against all of the other Defendants named in the complaint stem from other discrete events that occurred during Plaintiff's incarceration at KCF. It appears that Plaintiff believes that all of the events set forth in the complaint are related simply because they occurred during his incarceration at KCF and because he subjectively views all of the events as part of a vast conspiracy against him. However, Plaintiff's subjective belief and interpretation of events does not transform separate events regarding the medical care, or the lack thereof, that Plaintiff received, the responses to Plaintiff's grievances by supervisory Defendants, and the issuance of other, unrelated misconduct charges into events that arise out of the same transaction or occurrence.

Accordingly, the Court concludes that the above-described claims against Defendants Ferraro, Goforth, Longson, Bonnee, Kagey, Romeri, and Tuzinowski are properly joined. However, Plaintiff has improperly joined the remaining Defendants.

### B. Remedy

Because the Court has concluded that Plaintiff has improperly joined Defendants Howard, Storey, Massey, C. Batho, Teneyck, Tuller Desormeau, Jurich, Smith, Batho, Voorhees, Slater, Vital Core Physicians Group, Corizon Health Care, Wellpath, Knack, Jacobson, Ball, Lamb, and Hascall-Reyes to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be

severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Here, Plaintiff's complaint involves events that occurred in 2024 and 2025. (*See generally* Compl., ECF No. 1.) Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against Defendants Howard, Storey, Massey, C. Batho, Teneyck, Tuller

Desormeau, Jurich, Smith, Batho, Voorhees, Slater, Vital Core Physicians Group, Corizon Health

Care, Wellpath, Knack, Jacobson, Ball, Lamb, and Hascall-Reyes, and Plaintiff has provided no

basis for this Court to conclude that he would suffer gratuitous harm if his claims against these

Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants

Howard, Storey, Massey, C. Batho, Teneyck, Tuller Desormeau, Jurich, Smith, Batho, Voorhees,

Slater, Vital Core Physicians Group, Corizon Health Care, Wellpath, Knack, Jacobson, Ball,

Lamb, and Hascall-Reyes because they are misjoined. The Court will dismiss Plaintiff's claims

against these Defendants without prejudice.[3]

### III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

court must determine whether the complaint contains "enough facts to state a claim to relief that

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[3] Plaintiff is advised that any new civil actions in this Court must be filed on the form provided by
this Court, *see* W.D. Mich. LCivR 5.6(a), and at the time of filing his complaint, Plaintiff must
pay the required filing fees or apply in the manner required by law to proceed *in forma pauperis*.
As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to
Defendants and claims that are transactionally related to one another. The Court may, in its
discretion and without further warning, dismiss any future complaint, or part thereof, filed by
Plaintiff that contains claims that are misjoined.

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

With respect to properly joined Defendants Ferraro, Goforth, Longson, Bonnee, Kagey, Romeri, and Tuzinowski, Plaintiff brings the following § 1983 claims against them: First Amendment retaliation claims, Eighth Amendment claims, Fourteenth Amendment equal protection claims, Fourteenth Amendment procedural and substantive due process claims, and civil conspiracy claims. (*See* Compl., ECF No. 1, PageID.10.) Plaintiff also seeks to bring state law criminal claims against them, alleging that these Defendants engaged in forgery and larceny. (*See id.*, PageID.8.) Further, Plaintiff brings § 1981 claims and § 1985 claims against the properly joined Defendants. (*See, e.g., id.*, PageID.1.)[4]

### A.   Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

---

[4] Because Plaintiff specifically identifies the claims that he intends to bring against the properly joined Defendants, the Court does not construe Plaintiff's complaint to raise any further claims against these Defendants. (*See* Compl., ECF No. 1, PageID.10.) Although Plaintiff identifies other claims in his complaint, Plaintiff brings these claims against the misjoined Defendants.

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1.    First Amendment Retaliation Claims

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016). Here, Plaintiff alleges that he made oral complaints and that he filed written grievances. (*See, e.g.*, Compl., ECF No. 1, PageID.10, 11.) At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Therefore, at this early stage of the proceedings, the Court assumes, without deciding, that Plaintiff engaged in protected conduct for purposes of his First Amendment claim.

Next, to establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising

his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct. The Court addresses Plaintiff's First Amendment claims against the properly joined Defendants below.

> a.  **April 14, 2024, Statement and July 6, 2024, Dangerous Contraband Misconduct Charge and Confiscation of JP6 Tablet—Defendants Ferraro, Goforth, and Longson**

Plaintiff alleges that on April 14, 2024, while he was being reviewed on an unspecified misconduct charge, "Plaintiff orally asserted grieving [Defendants] Ferraro, Goforth, [and] Longson for conspiring to forge false misconducts." (Compl., ECF No. 1, PageID.10.) In response to Plaintiff's April 14, 2024, statement, Defendant Ferraro stated: "I can write misconducts for them if I want to; your grievance is going to get your sh[**] tore up and more tickets. We'll be down there to tear your sh[**] up." (*Id.*) On July 6, 2024, Defendant Goforth "planted evidence, [and] forged a false dangerous contraband misconduct." (*Id.*) Additionally, on July 6, 2024, Defendants Ferraro and Goforth entered his cell and stole his "JP6 tablet." (*Id.*, PageID.11.)

Even assuming, without deciding, that Plaintiff has alleged sufficient facts to satisfy the first and second elements of a retaliation claim, as explained below, Plaintiff's retaliation claims regarding the dangerous contraband misconduct charge and the confiscation of his JP6 tablet fail at the third step because Plaintiff's allegations regarding the third element of a First Amendment retaliation claim fall short.

Although, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the United States Court

of Appeals for the Sixth Circuit, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive).

In this action, although Plaintiff alleges that he engaged in protected conduct on April 14, 2024, and that on April 14, 2024, Defendant Ferraro stated, "your grievance is going to get your sh[**] tore up and more tickets[; w]e'll be down there to tear your sh[**] up," the issuance of the dangerous contraband misconduct charge and the confiscation of the JP6 tablet did not occur until July 6, 2024. (Compl., ECF No. 1, PageID.10, 11.) The April 14, 2024, statement on its own is insufficient to show adverse action, and Plaintiff alleges no facts about any interactions with Defendants Ferraro, Goforth, and Longson between April and July. Then, with respect to Defendants' actions on July 6, 2024, Plaintiff alleges no *facts* to suggest that when Defendants acted on July 6, 2024, they were motivated by the protected conduct that had occurred approximately three months prior. Instead, Plaintiff merely alleges the ultimate fact of retaliation; however, he alleges no *facts* from which to reasonably infer that when Defendants acted on July 6, 2024, they were motivated by any protected conduct. Under these circumstances, a vague suggestion of temporal proximity alone is insufficient to show a retaliatory motive. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). Furthermore, such "conclusory allegations of retaliatory

17

motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001).

Accordingly, for these reasons, all of Plaintiff's First Amendment retaliation claims premised on the April 14, 2024, statement and the July 6, 2024, dangerous contraband misconduct charge and confiscation of Plaintiff's JP6 tablet will be dismissed for failure to state a claim.

### b.      September 24, 2024, Disobeying a Direct Order Misconduct Charge—Defendants Goforth, Longson, Ferraro, and Tuzinowski

Plaintiff alleges that after he returned to KCF on September 24, 2024, following his hernia surgery, Defendant Goforth knew that Plaintiff "was paralyzed and in extreme pain from [the] hernia surgery" and ordered Plaintiff "to walk to [the] control center" to pick up his ID card, stating: "[Defendant] Ferraro said report to [the] control center to pick up your ID card[;] That's not my 'f[***]in job.'" (Compl., ECF No. 1, PageID.11.) In response, Plaintiff told Defendant Goforth that "he [would be] grieving her retaliation for pending grievances as she knows [Plaintiff was] paralyzed[ and] in extreme pain from surgery." (*Id.*) Plaintiff "advised her to get a wheelchair and a pusher," and another prisoner offered to push Plaintiff in a wheelchair. (*Id.*) Defendant Goforth then left and returned with Defendant Longson, stating: "We're giving you a direct order[] to go get your ID card, that's not my f[***]ing job." (*Id.*, PageID.12.) The other prisoner again offered to push Plaintiff in a wheelchair, and Defendant Goforth stated: "F[***] him, he wants to write grievances, he can walk." (*Id.*) Defendant Goforth then issued Plaintiff a disobeying a direct order misconduct charge for the above-described incident, and on September 25, 2024, Defendant Tuzinowski reviewed this charge with Plaintiff. (*Id.*) Plaintiff alleges that Defendant Tuzinowski allowed the "defective" misconduct charge to be rewritten to correct an unspecified defect, and

that Defendant Ferraro rewrote the misconduct ticket. (*Id.*) Plaintiff was ultimately found not guilty of the charge. (*Id.*)

As to Defendant Goforth, taking Plaintiff's factual allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's First Amendment retaliation claim against Defendant Goforth premised on the issuance of the September 24, 2024, disobeying a direct order misconduct charge.

However, as to Defendant Longson, although Plaintiff alleges that Longson was present at some point during Plaintiff's interaction with Defendant Goforth on September 24, 2024, Plaintiff alleges no facts to suggest that Defendant Longson took any adverse action against Plaintiff. Indeed, besides alleging that Defendant Longson was present when Defendant Goforth gave the direct order to Plaintiff on September 24, 2024, Plaintiff alleges no facts to suggest that Defendant Longson took any further actions on that date, let alone any adverse actions. Under these circumstances, Plaintiff fails to state a First Amendment retaliation claim against Defendant Longson premised on the issuance of the September 24, 2024, disobeying a direct order misconduct charge.

With respect to Defendants Tuzinowski and Ferraro, even assuming, without deciding, that Plaintiff could show that he engaged in protected conduct and that Tuzinowski and Ferraro took adverse actions against him, Plaintiff fails to allege any facts to suggest that Defendants Tuzinowski and Ferraro knew that Plaintiff had engaged in protected conduct prior to them rewriting the September 24, 2024, misconduct ticket. Therefore, Plaintiff fails to allege sufficient facts to satisfy the third element of a retaliation claim. Indeed, Plaintiff merely alleges the ultimate fact of retaliation without providing supporting factual allegations to even suggest that the alleged adverse actions were motivated by any protected conduct. Such "bare allegations of malice on the

19

defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." *Lewis*, 20 F. App'x at 459 (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)). For these reasons, Plaintiff fails to state a First Amendment retaliation claim against Defendants Tuzinowski and Ferraro premised on their actions regarding the September 24, 2024, disobeying a direct order misconduct charge.

### c.   March 8, 2025, Out of Place Misconduct Charge—Defendant Longson

Finally, Plaintiff alleges that on March 8, 2025, Defendant Longson "forged a false out of place misconduct in retaliation for pending grievances." (Compl., ECF No. 1, PageID.14–15.) Specifically, in the misconduct report, Defendant Longson stated that he had "directly observed [Plaintiff] via [the] facility camera system," but Plaintiff claims that Longson "did not directly observe a violation via [the] facility camera system." (*Id.*, PageID.15) Plaintiff was ultimately found not guilty of the out of place misconduct charge. (*Id.*)

Although Plaintiff claims that Defendant Longson issued the out of place misconduct charge "in retaliation for pending grievances," Plaintiff alleges no facts about the specific "pending grievances" at issue. Under these circumstances, because Plaintiff alleges no facts about these grievances, Plaintiff necessarily fails to allege any facts to suggest that Defendant Longson knew about the grievances, let alone that Longson's actions were motivated by the pending grievances. Instead, Plaintiff merely alleges the ultimate fact of retaliation without providing supporting factual allegations to suggest that the alleged adverse action was motivated by the protected conduct. This is insufficient to state a First Amendment retaliation claim. *See, e.g.*, *Murray*, 84 F. App'x at 556 (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)). Accordingly, Plaintiff's First

Amendment retaliation claim against Defendant Longson premised on the issuance of the March 8, 2025, out of place misconduct charge will be dismissed for failure to state a claim.

### d.    Summary

In summary, (i) all of Plaintiff's First Amendment retaliation claims premised on the April 14, 2024, statement and the July 6, 2024, dangerous contraband misconduct charge and confiscation of Plaintiff's JP6 tablet will be dismissed for failure to state a claim, (ii) Plaintiff's First Amendment retaliation claims against Defendants Longson, Tuzinowski, and Ferraro premised on their actions regarding the September 24, 2024, disobeying a direct order misconduct charge will be dismissed for failure to state a claim, and (iii) Plaintiff's First Amendment retaliation claim against Defendant Longson premised on the issuance of the March 8, 2025, out of place misconduct charge will be dismissed for failure to state a claim. Plaintiff's First Amendment retaliation claim against Defendant Goforth premised on the issuance of the September 24, 2024, disobeying a direct order misconduct charge will remain in the case.

### 2.    Eighth Amendment Claims

When setting forth his claims against Defendants Ferraro, Goforth, Longson, Bonnee, Kagey, Romeri, and Tuzinowski, without providing any further explanation, Plaintiff references the Eighth Amendment's prohibition on cruel and unusual punishment. (*See* Compl., ECF No. 1, PageID.10.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the

"minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, as to the properly joined Defendants, Plaintiff's allegations do not show that any of these Defendants knew of a substantial risk of harm to Plaintiff and disregarded that substantial risk. (*See generally* Compl., ECF No. 1.) The only allegation that has a suggestion of a potential Eighth Amendment claim is Plaintiff's allegation that Defendant Goforth "punish[ed]" him by ordering Plaintiff "to walk to [the] control center" on September 24, 2024, after Plaintiff had

returned to KCF following hernia surgery when Goforth knew that Plaintiff was "paralyzed and in extreme pain." (*Id.*, PageID.12.) The Court does not minimize Plaintiff's experience; however, this one interaction is insufficient to show that Plaintiff's conditions of confinement fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *cf. J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).

Accordingly, because Plaintiff fails to show that any of the properly joined Defendants knew of a substantial risk of harm to Plaintiff and disregarded that substantial risk, Plaintiff fails to state any Eighth Amendment claim upon which relief may be granted.

### 3.    Fourteenth Amendment Equal Protection Claims

Additionally, when setting forth his claims against Defendants Ferraro, Goforth, Longson, Bonnee, Kagey, Romeri, and Tuzinowski, without providing any further explanation, Plaintiff references the Equal Protection Clause of the Fourteenth Amendment. (Compl., ECF No. 1, PageID.10.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff fails to allege any facts to suggest that he was treated differently than others who were similarly situated. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory, and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Accordingly, any intended Fourteenth Amendment equal protection claims will be dismissed.

### 4.    Fourteenth Amendment Procedural Due Process Claims

#### a.    Claims Regarding Misconduct Charges

Plaintiff alleges that Defendants violated his Fourteenth Amendment procedural due process rights by issuing Plaintiff the July 6, 2024, dangerous contraband misconduct ticket, changing Plaintiff's status to non-bond status pending the misconduct hearing for this charge, issuing the September 24, 2024, disobeying a direct order misconduct ticket, rewriting this misconduct ticket, and issuing the March 8, 2025, out of place misconduct ticket. (*See* Compl., ECF No. 1, PageID.10.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To state a Fourteenth Amendment procedural due process claim, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, the United States Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his [or her] sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation for thirty days did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Here, Plaintiff states that he received a dangerous contraband misconduct ticket and was convicted of this misconduct charge, and that he received a disobeying a direct order misconduct

ticket and an out of place misconduct ticket and was found not guilty of both charges. (*See* Compl., ECF No. 1, PageID.11–12, 14–15.) For the dangerous contraband misconduct charge, Plaintiff was initially not placed on non-bond status pending the misconduct hearing, but then he was changed to non-bond status pending the hearing. (*Id.*, PageID.12.) As a result of Plaintiff's dangerous contraband misconduct conviction, Plaintiff received fifteen days on toplock. (*Id.*, PageID.11.)

To state a Fourteenth Amendment procedural due process claim, Plaintiff must show that the sanctions he received as a result of the misconduct conviction "inevitably affect[ed] the duration of [Plaintiff's] sentence" or imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87. However, the sanctions available in the MDOC disciplinary scheme do not affect the duration of an inmate's sentence, and placement in segregation or non-bond status for a limited period of time or the receipt of the loss of privileges sanction do not constitute "atypical and significant hardship[s]," as contemplated by *Sandin*. *See, e.g.*, *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007) (discussing that the loss of disciplinary credits under the MDOC's disciplinary scheme does not affect the duration of a prisoner's sentence); *Sandin*, 515 U.S. at 484 (holding that placement in segregation for 30 days does not impose an atypical and significant hardship); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant); *cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs).

Furthermore, as to Plaintiff's disobeying a direct order misconduct ticket and out of place misconduct ticket, because Plaintiff was found not guilty of these misconduct charges, he did not receive any sanctions for a misconduct conviction. (*See* Compl., ECF No. 1, PageID.12, 15.) Under these circumstances, Plaintiff necessarily fails to show that he received any sanctions for these misconduct charges that impacted the duration of his sentence or constituted an "atypical and significant hardship." *Sandin*, 515 U.S. at 486–87. Moreover, even if Plaintiff had alleged the loss of a protected liberty interest, he would not state a due process claim because he fails to show that he did not receive all the process due to him. *See generally Wolff v. McDonnell*, 418 U.S. 539 (1974) (setting forth the minimum process required for prison disciplinary proceedings that implicate a liberty interest). In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. That is, the right to due process protects Plaintiff's ability to *respond* to spurious charges. It does not include the right to *prevent* or *prevail* on such charges. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." (emphasis in original) (citations omitted)).

Accordingly, for all of these reasons, Plaintiff fails to state any Fourteenth Amendment procedural due process claims against Defendants for the issuance of the July 6, 2024, dangerous contraband misconduct ticket, Plaintiff's placement on non-bond status pending the misconduct hearing for this charge, the issuance of the September 24, 2024, disobeying a direct order

misconduct ticket, the rewriting of this misconduct ticket, and the issuance of the March 8, 2025, out of place misconduct ticket.

### b.      Claims Regarding Deprivation of Personal Property

Plaintiff alleges that on July 6, 2024, Defendants Ferraro and Goforth entered his cell and stole his "JP6 tablet." (Compl., ECF No. 1, PageID.11.) Plaintiff did not receive a contraband removal notice for this item and an administrative hearing was never held. (*Id.*) To the extent that Plaintiff intended to raise a due process claim regarding the deprivation of Plaintiff's property, as explained below, this claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state-court action

would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

Accordingly, Plaintiff fails to state a Fourteenth Amendment procedural due process claim regarding the deprivation of his property.

### c.    Claim Regarding Responses to Grievances

Plaintiff alleges that he filed a grievance about the September 24, 2024, disobeying a direct order misconduct charge, and that Defendants Kagey and Romeri "lied in [their] grievance response" dated October 30, 2024, about whether Plaintiff had a medical detail for a wheelchair. (Compl., ECF No. 1, PageID.12)

Various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue*, 80 F. App'x at 430; *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim*, 461 U.S. at 249; *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, any response, or lack thereof, to Plaintiff's grievances did not deprive Plaintiff of due process.

Accordingly, Plaintiff's Fourteenth Amendment due process claims regarding Defendants' responses to his grievances will be dismissed for failure to state a claim.

### 5.    Fourteenth Amendment Substantive Due Process Claims

Plaintiff also alleges that Defendants violated his Fourteenth Amendment substantive due process rights. (*See* Compl., ECF No. 1, PageID.10.)

"Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

To state a substantive due process claim, "a 'plaintiff must show as a predicate the deprivation of a liberty or property interest,' as well as 'conscience-shocking conduct.'" *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 766 (6th Cir. 2020) (quoting *Guertin v. State*, 912 F.3d 907, 922 (6th Cir. 2019)). That is, a plaintiff must first show "a deprivation of a constitutionally protected liberty interest" and then show that "the government's discretionary conduct that deprived that interest was constitutionally repugnant." *Id.* at 765 (quoting *Guertin*, 912 F.3d at 922). Moreover, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 273–75 (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

Here, as discussed above, Plaintiff did not lose a protected liberty interest as a result of any misconduct convictions. And, the First Amendment is the applicable constitutional protection for

Plaintiff's retaliation claims and the Eighth Amendment is the applicable constitutional protection for Plaintiff's deliberate indifference claims. Accordingly, for these reasons, Plaintiff's Fourteenth Amendment substantive due process claims will be dismissed for failure to state a claim.

### 6.    Civil Conspiracy Claims

Plaintiff alleges that Defendants engaged in a civil conspiracy in violation of 42 U.S.C. § 1983. (*See* Compl., ECF No. 1, PageID.10.)

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, although Plaintiff claims that some Defendants mentioned each other when speaking with Plaintiff about the events underlying this lawsuit, Plaintiff does not allege that any "agreement" or "plan" existed. (*See generally* Compl., ECF No. 1.) Instead, Plaintiff's allegations of conspiracy are wholly conclusory. Plaintiff's subjective belief and personal interpretation of the events, without supporting facts, are insufficient to show that Defendants engaged in a conspiracy. And, the fact that Defendants each took allegedly adverse actions against Plaintiff does not on its

own show that they engaged in a civil conspiracy. As the United States Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not allege *facts* to show an agreement among Defendants, Plaintiff fails to state a plausible § 1983 civil conspiracy claim.

### B.    Section 1981 and Section 1985 Claims

In Plaintiff's complaint, he also references a "civil conspiracy" under 42 U.S.C. §§ 1981 and 1985; however, the complaint contains no further reference to these claims. (*See* Compl., ECF No. 1, PageID.1, 10.)

Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors and provides a cause of action for race-based employment discrimination. *See* 42 U.S.C. § 1981. In *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), the Supreme Court held that § 1981 does not itself provide a remedy against state actors. *Id.* at 731. Plaintiff's claims are against state actors. And, regardless, Plaintiff fails to allege any *facts* showing that he was involved in the making or enforcing of contracts between public and private actors or that he faced race-based employment discrimination. Plaintiff therefore fails to state a claim under § 1981.

Further, to maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3),[5] a plaintiff must show the following four elements: (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998). Moreover, a plaintiff must allege that there existed "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *see also Collyer*, 98 F.3d at 233. Plaintiff fails to allege sufficient facts to suggest that Defendants' alleged actions were motivated by Plaintiff's membership in a distinct class. Therefore, Plaintiff's § 1985 claims will be dismissed.

In summary, for the reasons set forth above, Plaintiff's claims under § 1981 and § 1985 will be dismissed for failure to state a claim.

### C.    State Law Claims

As to Defendants Ferraro, Goforth, Longson, Bonnee, Kagey, Romeri, and Tuzinowski, Plaintiff seeks to bring state criminal law claims against these Defendants. (*See, e.g.*, Compl., ECF No. 1, PageID.8.) However, "a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).

---

[5] Subsections (1) and (2) of § 1985 do not apply. Subsection (1) is inapplicable because Plaintiff does not allege a conspiracy to interfere with federal officers in the performance of their duties. *See* 42 U.S.C. § 1985(1). The first clause of subsection (2) is also inapplicable because Plaintiff does not allege that Defendants conspired to influence parties, witnesses, or jurors in federal court proceedings. *See* 42 U.S.C. § 1985(2). In addition, the second clause of subsection (2) is inapplicable because Plaintiff does not allege that Defendants conspired to "interfere with due process in state courts with the intent to deprive persons of their equal protection rights." *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006).

Therefore, Plaintiff's request in this civil action to bring state criminal charges against Defendants is frivolous and fails to state a claim for which relief can be granted.

### Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Further, the Court will drop Defendants Howard, Storey, Massey, C. Batho, Teneyck, Tuller Desormeau, Jurich, Smith, Batho, Voorhees, Slater, Vital Core Physicians Group, Corizon Health Care, Wellpath, Knack, Jacobson, Ball, Lamb, and Hascall-Reyes as misjoined pursuant to Rule 21 of the Federal Rules of Civil Procedure. The Court will dismiss Plaintiff's claims against these Defendants without prejudice.

Additionally, having conducted the review required by the PLRA, the Court determines that Defendants Ferraro, Longson, Bonnee, Kagey, Romeri, and Tuzinowski will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Goforth: First Amendment retaliation claims premised on the April 14, 2024, statement and the July 6, 2024, dangerous contraband misconduct charge and confiscation of Plaintiff's JP6 tablet, Eighth Amendment claims, Fourteenth Amendment equal protection claims, Fourteenth Amendment procedural and substantive due process claims, § 1983 civil conspiracy claims, § 1981 claims, § 1985 claims, and state criminal law claims. Plaintiff's First Amendment retaliation claim against Defendant Goforth premised on the issuance of the September 24, 2024, disobeying a direct order misconduct charge remains in the case.

An order consistent with this opinion will be entered.


Dated:   October 27, 2025                         /s/ Robert J. Jonker
                                                  Robert J. Jonker
                                                  United States District Judge